[Criminal No. 600. Filed January 24, 1925.]

[232 Pac. 552.]

# ANNIE TAYLOR, Appellant, v. STATE, Respondent.

1. HOMICIDE—OWNER CANNOT KILL FOR ENTRY INTO HOUSE AFTER ENTRY ACCOMPLISHED.—Where the assault on the owner's house was an accomplished fact, owner could not punish act, however wrongful, by taking intruder's life.

2. HOMICIDE—TO JUSTIFY OWNER IN KILLING ANOTHER AFTER ENTRY ACCOMPLISHED, OWNER MUST ACT UNDER REASONABLE APPREHENSION THAT HIS LIFE IS IN IMMEDIATE DANGER.—To justify owner in taking life of another, after such other has unlawfully entered owner's house, it must be necessary or apparently necessary to protect owner's life, or to protect himself from great bodily harm, and he must act under reasonable apprehension that his life is in immediate danger although he need not retreat, but can stand his ground and defend to extent of taking life.

3. HOMICIDE—EVIDENCE HELD TO MAKE QUESTION WHETHER CIRCUMSTANCES SUFFICIENT TO EXCITE FEAR OF REASONABLE PERSON ONE FOR JURY.—In homicide prosecution, evidence *held* to make question whether circumstances were sufficient to excite fears of reasonable person, and whether defendant acted under influence of such fears alone, or from other motives, for jury.

4. CRIMINAL LAW—INSTRUCTION ON MUTUAL COMBAT, THOUGH NOT SUPPORTED BY FACTS, HELD NOT PREJUDICIAL ERROR.—In homicide prosecution, where evidence did not show that defendant and deceased were engaged in mutual combat, reading of Penal Code of 1913, section 180, subdivision 3, requiring one engaged in mutual combat to retreat, though unnecessary, *held* not prejudicial error.

---

1. Homicide in defense of house, person or family, see note in 12 Am. Rep. 212.

Homicide in defense of habitation, see note in 21 Ann. Cas. 721. See, also, 13 R. C. L. 840.

2. Right of person assaulted on own premises to repel attack without retreating, see notes in 5 Ann. Cas. 999; 15 Ann. Cas. 51. See, also, 13 R. C. L. 842.

4. Homicide in mutual combat voluntarily and willingly entered into, see notes in 109 Am. St. Rep. 804; 45 L. R. A. (N. S.) 646.

See (1) 30 C. J., p. 83 (1926 Anno.)    (2) 30 C. J., p. 71.    (3) 30 C. J., p. 330.    (4) 30 C. J., p. 389.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Mr. Herman Lewkowitz, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson and Mr. E. W. McFarland, Assistant Attorneys General, for the State.

ROSS, J.—The appellant was informed against for murder, and convicted of manslaughter. She appeals from the judgment of conviction and assigns errors on the court's refusal to direct a verdict at the close of the state's case on her motion, and the giving of a certain instruction upon the right of self-defense. It is necessary to state the evidence, which is short and uninvolved.

One John Allen and the defendant had been living together for a short time in a house located at 438 East Jefferson Street, Phoenix, prior to November 28, 1923, the date of the homicide. On the morning of that day, while Allen was absent from such house, the defendant with the assistance of one Herbert C. Chinn moved into another house on the same premises, consisting of two rooms, one directly behind the other. The one entrance into the house was through the front door on the alley. The only person present besides the principals to the homicide was Chinn, and, testifying as a witness in behalf of the prosecution, he related the facts leading up to the killing about as follows: That he (witness) had entered the house about 3:30 in the afternoon, and had fastened the screen door by inserting the hook thereon into a staple, and had pushed the front door to, but had not locked it; that he and defend-

ant were in the house at 6:10 o'clock, he lying on a cot in rear room reading and defendant in front room, when Allen came there and asked admittance of defendant, stating he wanted to talk to her; that defendant told him to go away, she did not want to talk to him or have anything to do with him; that he repeated his demand for admittance and she her refusal several times during the next forty minutes; that Allen at one time shook the window in rear room, and tried to get into house; that during this time Allen made statements to defendant of the general character of this one:

"When you come out, if you come out, I will knock your block off, your damn block off. You black bitch, you are no good. He quieted down for a few minutes and he would start again."

That deceased obtained entrance to the house; and how, and what happened at that time we let the witness tell in his own language:

"About a quarter to seven he gained entrance to the door by some way working the latch up; I couldn't see what he was doing, but I heard it. At the time I had gotten up off the bed, and was standing in about the center of the rear room. As he opened the screen door, he pushed the wooden door open and stepped in. When he stepped in, I started through the rear room through the front room. As I was going out, I passed Mrs. Taylor somewhere in the northwest·corner of the house, and I got within two paces of him and the door; he was about two paces in the door. He pushed me to one side, to the east of the house. The bed sets in the east corner of the house. I balanced myself on the bed, and by that time he had one hand on my shoulder. When he pushed me, he started past me, and just about the time he got about a foot, or a little less, maybe, or more, the shot was fired. He doubled up and passed out of the house. He stepped out in the alley, and he turned and run about 30 feet. He said something about he was shot; the exact words I don't

remember. He doubled up again, grabbed himself, and turned and run down the alley, turning towards Jefferson street was the last I seen of him.''

Witness further stated he did not see defendant shoot deceased, and saw no gun during the whole argument; that earlier in the day he had seen a 32 or 38 automatic gun on top of defendant's trunk which he had helped move into the front room that day; the trunk being located in the room near where defendant was standing when the fatal shot was fired.

If this evidence leaves any doubt as to whether defendant fired the fatal shot, other evidence conclusively shows that no one else could possibly have done so. Indeed, defendant's only defense was self-defense or defense of the dwelling. She contends the state's evidence shows that she was justified in shooting the deceased. Whether defendant relies upon the circumstance of the forcible entry into her house by deceased, or upon his previous threats of violence to her person, as justification, she does not explicitly state, but apparently both. It is clear, however, the shot was not fired to prevent deceased from entering the house, for that he had done without meeting any physical resistance. The assault on the house was an accomplished fact, and defendant could not punish the act, however wrongful, by taking the intruder's life. As is said in *Carrol* v. *State.* 23 Ala. 28, 58 Am. Dec. 282:

''The owner may resist the entry [into his house] but he has no right to kill, unless it be rendered necessary [in order] to prevent a felonious destruction of his property, or to defend himself against loss of life, or great bodily harm.''

The shooting of deceased by defendant must be justified, if at all, as necessary or apparently necessary to protect her own life, or to protect herself

from great bodily harm, and she must have acted under a reasonable apprehension that her life was in immediate danger. She had the right to repel force by force against a manifest intent and endeavor by violence to commit a known felony upon her by deceased. It was not necessary for her to retreat; she could stand her ground and defend against such intent and endeavor to the extent of taking life. *State* v. *Patterson,* 45 Vt. 308, 12 Am. Rep. 200. Before the court could have properly granted defendant's motion for a directed verdict, the facts and circumstances must have been such as to present an absolute right in the defendant to kill the deceased. Clearly his trespass gave her no such right. And whether a reasonable person, knowing all the facts and circumstances as she must have known them, would have apprehended his life was in imminent danger was a question under proper instructions for the jury.

Defendant did not choose to become a witness and tell the jury why she killed deceased, and a reading of the testimony of Chinn will satisfy anyone that he was a very unwilling witness for the prosecution. Indeed it is argued by the Attorney General, and not without reason, that the shooting did not occur in defendant's house, but in the alley where deceased was found by the officers. He bases this contention upon the facts (1) that the bullet passed through the body of deceased, yet a minute examination of the walls, floors, ceiling and house disclosed no marks made by bullet, and that it was not found in the house; and (2) an empty cartridge of the same caliber as defendant's automatic gun was found in the alley the morning after the shooting. At any rate, whether the circumstances were sufficient to excite the fears of a reasonable person, and whether defendant acted under the influence

of such fears alone or from other motives, were questions for the jury.

As a part of the instruction the court read to the jury subdivisions 1, 2 and 3 of section 180 of the Penal Code. Counsel for defendant assigns as error the reading of subdivision 3 of such section, to wit:

"Homicide is also justifiable when committed by any person in either of the following cases: . . .

"(3) When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant, of such person, when there is reasonable ground to apprehend a design to commit a felony, or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mortal combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed."

The defendant does not find fault with the first part, but only with the last clause thereof, or that part defining the duty of an assailant, or one engaged in "mortal" combat in good faith, to withdraw before committing a homicide. (It was probably due to a misprint that the phrase is "mortal combat" and not "mutual combat." The duty of retreating in the latter case is well recognized, while, where the combat is mortal, it may or may not be mutual. *People* v. *Fowler,* 178 Cal. 657, 174 Pac. 892–897.) The complaint is that this law has no application to the facts. We think that may be true. The record does not show that defendant was the assailant, or that she and deceased were engaged in mutual combat. It was therefore unnecessary to read that part of section 180. Indeed, it should not have been read. It did not, however, constitute reversible error, unless it had a tendency to prejudice defendant's rights.

It is inconceivable that the jury should have been influenced in the least for they, as well as anyone, would at once perceive that it was entirely foreign to the facts they were trying, and could be considered only in a case where the defendant was the assailant, or where she and the deceased had mutually engaged in combat. Appellant, however, cites *People* v. *McDonnell*, 32 Cal. App. 694, 163 Pac. 1046, wherein a similar instruction was involved, and contends that the ruling of that court upholds her position as to this instruction. The facts, however, in the McDonnell case were very different from the facts in this case. As related by the court they are:

"Appellant had been violently and inexcusably beaten in his own home by a man of quarrelsome disposition. He had ordered his antagonist to leave the house, and had told him he would kill him if he attempted to return. Deceased apparently seized a deadly weapon and turned, with manner and language plainly indicating his intention to kill or seriously injure defendant."

No such situation is presented here. In the McDonnell case there was an actual combat or struggle in which the deceased probably was the aggressor. The court there held that the instruction was prejudicial error, because it placed a duty upon the defendant that could not possibly exist under the facts; that is, it required him to retreat in the face of a felonious attack and at a time when his life was in imminent danger from his assailant before he could exercise the right of self-defense or be justified in slaying his assailant. This was clearly erroneous. Under the facts as they appear in this case, we are satisfied the instruction could not have harmed or prejudiced any right of the defendant, and, not

being prejudicial error, it is not ground for reversal.

The judgment of the lower court is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.