333 P.2d 1081

STATE of Arizona, Appellee,

v.

Conway Mike SORRELL, Appellant.

No. 1116.

Supreme Court of Arizona.

Jan. 21, 1959.

174

Mario Cota-Robles and Lawrence Olla-
son, Tucson, for appellant.

Robert Morrison, Atty. Gen., Raul H.
Castro, County Atty. and Jack I. Podret,
Deputy County Atty., Pima County,
Tucson, for appellee.

JOHNSON, Justice.

Defendant Conway Mike Sorrell was
charged with the crime of murder in the
first degree. He was duly tried and found
guilty as charged, the jury fixed his pun-
ishment at life imprisonment, and he has
perfected his appeal to this court.

There is no substantial dispute as to the
events which led up to the alleged crime.
The facts briefly stated are as follows: On
July 18, 1957, a young Negro male was
shot and killed in front of the apartment

rented by the defendant. The neighborhood where the homicide took place was known as a violent and rough neighborhood and in a vicinity where many crimes were committed. The defendant testified that on the day of the shooting he returned to his apartment about noon when three persons, decedent and two women, approached his apartment and asked if they could use his room for immoral purposes. The defendant refused to let them into his apartment, and there were words exchanged while the defendant was on the inside of his apartment and the three persons were on the sidewalk in front of his apartment. At no time was there any physical contact between the decedent and the defendant. During the argument the defendant testified that the decedent reached for his hip pocket as he was approaching the door of defendant's apartment, although still on the edge of the sidewalk in front of the doorway, defendant reached for his shotgun, loaded it, kicked open the screen door and fired at decedent which resulted in his death.

Immediately after the killing the defendant went to the Tucson police station and notified the police that he had just shot a man. Defendant freely gave a statement setting forth the above events but claimed that he shot decedent because he thought he had a weapon or knife, although he did not see it, and feared for his life. Defendant told the police officers that he felt decedent had it coming to him; and further

"I wanted to break him of his habits" and "People down there don't like me. They report me to the police all the time, and I'm going to make a believer out of them. I'll probably wind up going to the penitentiary for life." Defendant continued to maintain during the course of the trial that he shot decedent in self-defense.

■ The defendant contends the trial court erred in giving, over the objection of the defendant, the following instruction which was offered by the state:

"You are instructed that before a person may kill in self-defense there must be these four conditions all existing; one, the circumstances must be such as to excite the fears of a reasonable person of great bodily injury or death to himself. Two, the party committing the homicide must have acted under the influence of such fears alone. Three, in resisting an assault, the person claiming self-defense must not use any more force than reasonably appears under the circumstances to be necessary to repel the assailant, and fourth, *if the slayer is engaged in mutual combat* or was the assailant, he must really and in good faith have endeavored to decline any further struggle before the killing." (Emphasis supplied.)

It is the position of the defendant that the "fourth" condition of the above in-

struction was misleading and should not have been given for the reason that there was no evidence of mutual combat.

We have carefully read the testimony and it does not show that the decedent and the defendant were engaged in mutual combat, and the trial court should not have read that portion of the instruction stating the rule of law where mutual combat is involved. It does not, however, constitute reversible error unless the rights of the defendant were prejudiced.

It is well settled in this state that instructions must be considered as a whole, and if, as a whole, they are free from error, an assignment predicated on isolated paragraphs or portions, which standing alone might be misleading, does not constitute reversible error.

The trial court correctly instructed the jury on the right of the defendant to defend his home, and under certain circumstances, as defined in the instructions, the jury was told that defendant was under no duty to retreat but had the right to protect his person or his home, even to the extent of taking the life of the decedent.

In Taylor v. State, 27 Ariz. 228, 232 P. 552, 554, a similar instruction was given by the trial court where there was no evidence of mutual combat between the decedent and the defendant; we there held that the giving of such an instruction did not constitute prejudicial error, and said:

" * * * The record does not show that defendant was the assailant, or that she and deceased were engaged in mutual combat. It was therefore unnecessary to read that part of section 180 [now A.R.S. § 13–462]. Indeed, it should not have been read. It did not, however, constitute reversible error, unless it had a tendency to prejudice defendant's rights. It is inconceivable that the jury should have been influenced in the least for they, as well as any one, would at once perceive that it was entirely foreign to the facts they were trying, and could be considered only in a case where the defendant was the assailant, or where she and the deceased had mutually engaged in combat. * * *"

We are of the opinion that it is very unlikely that the jury was in any manner influenced or misled by the giving of the portion of the instruction assigned as error. We must assume that the jury were persons of ordinary intelligence and that they carefully considered all the evidence presented. The jury knew there was no evidence that the decedent and defendant were engaged in mutual combat at the time of the killing, and that the instruction given concerning mutual combat did not apply. We are satisfied that the instruction did not prejudice any right of the defendant and is not grounds for reversal.

■ The defendant was called as a witness in his own behalf, and on cross-examination he was asked the following questions:

"Mr. Podret: (Deputy County Attorney) Q. Mike, have you ever been convicted of a felony? A. I certainly have. I went then but I shouldn't have went.

"Q. Just answer my question. When was that? A. About two years ago.

"Q. What was it for?. What was the felony? A. What was the felony?

"Mr. Morgan: I object, Your Honor. Inadmissible, irrelevant and immaterial.

"The Court: Overruled.

"Mr. Podret: Q. What were you convicted of, Mike? A. What I was convicted on, attempted murder, assault with a deadly weapon. · That's my first * * *.

"Q. Have you ever been convicted of a felony at any other time? A. Not no felony."

Thereafter the state offered in evidence a certified copy of a judgment and commitment from the Superior Court of Pima County, Arizona, dated June 7, 1954, showing that the defendant had been found guilty of an assault with a deadly weapon and sentenced to a term of from one to two years in prison. The trial court, over the objection of the defendant, admitted such record in evidence and the same was read to the jury.

Defendant concedes that under A.R.S. § 13–163, where he is a witness in his own behalf, he may be cross-examined to the same extent and subject to the same rules as any other witness; that the questions propounded by the state were proper for the purpose of an attempt to impeach the defendant or to affect his credibility as a witness; and that he may be examined on whether he has suffered a previous conviction of a felony. State v. Stago, 82 Ariz. 285, 312 P.2d 160. It is the contention of the defendant that because he admitted a prior conviction of the same felony on cross-examination, it was prejudicial error for the trial court to admit in evidence and have read to the jury a certified copy of such record of conviction.

■ The general rule is that the state may inquire of the defendant when he is a witness if he was previously convicted of a felony. If the answer is in the affirmative he may be asked the number of such convictions, the names and nature of the crimes, and the places where they were committed, State v. Polan, 78 Ariz. 253, 278 P.2d 432, and if the answers are correctly given the inquiry must end there. If any answer of the defendant in this regard is

incorrect, or if he claims he does not remember, or if he denies such conviction or equivocates in his response to questions as to conviction of felonious crimes, the facts of his conviction or convictions may be shown by the record thereof.

We fail to conceive of any reason or justification for the offer or admission in evidence of the defendant's record of prior conviction when on cross-examination he had fully admitted his past record and there was then no occasion for an impeachment of his testimony. While the trial court committed error in the admission of such record under the facts of this case, we do not believe that defendant suffered injury by this ruling. People v. Craig, 196 Cal. 19, 235 P. 721; People v. Darcy, 101 Cal.App.2d 665, 226 P.2d 53.

The language employed by Chief Justice Ross in the case of West v. State, 24 Ariz. 237, 208 P. 412, 417, is particularly apropos to cases such as this:

"* * * Just why county attorneys will, in the prosecution of criminal cases, insist upon getting into the record, as evidence, things that are clearly not evidence, especially in a case wherein the evidence of guilt of the defendant is overwhelming, it is very difficult to understand. Their position should be to see that neither the rights of the people nor the defendant are outraged, and they should be as unwilling to permit improper and irrelevant testimony against a defendant as to see one guilty of crime go unpunished."

This court has consistently held to the view that no case will be reversed because of technical errors which do not affect the substantial rights of the defendant; and we have frequently applied the test that had the errors pointed out not been committed, is there reasonable probability that the verdict might have been different? State v. Lane, 72 Ariz. 220, 233 P.2d 437, and cases cited therein.

It is apparent from the verdict rendered by the jury in this case that they did not believe the defendant's evidence that he killed the decedent in defense of his person and his home. The jury must have concluded that the state's theory that the defendant was the assailant and that he was not acting in self-defense was a true version of what happened at the time of the killing. We do not believe it is reasonable to suppose that any of the errors here complained of would have changed the verdict of the jury.

The defendant was accorded a fair and impartial trial and the judgment of conviction must be affirmed.

PHELPS, C. J., and STRUCKMEYER, UDALL, and BERNSTEIN, JJ., concurring.