[Crim. No. 3852. Fourth Dist., Div. Two. Sept. 21, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBY JOE TINER, Defendant and Appellant.

## COUNSEL

Garza & Kassel, Philip Kassel and Donald W. Jordan, Jr., for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Geoffrey S. Cantrell, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KAUFMAN, J.**—In an indictment returned by the Grand Jury of San Bernardino County, defendant was charged in count I with sale of marijuana (Health & Saf. Code, § 11531), and in count II with selling a restricted dangerous drug (Health & Saf. Code, § 11912). By amendment to the indictment, defendant was further charged with two prior felony convictions, both for violation of Health and Safety Code, section 11500 (possession of a narcotic other than marijuana).

Defendant entered a plea of not guilty. A denial of the two prior convictions was entered in his behalf. Thereafter, out of the presence of the jury, the court conducted a hearing to determine the validity of the prior convictions. During the course of the hearing, defendant admitted the first conviction and, following the hearing, he admitted the second prior conviction.[1]

The jury found defendant guilty as charged, and the court determined that defendant had suffered two prior convictions within the meaning of

[1]Actually, defendant admitted having pleaded guilty, as more greatly detailed hereafter. He maintained, however, that, as a matter of law, the pleas did not constitute prior felony convictions and expressed his desire to preserve the right to further assert his legal contentions in the event of an appeal.

Health and Safety Code, sections 11531 and 11912. Defendant's motion for a new trial was denied, and he was sentenced to state prison for the term prescribed by law on both counts, sentences to run concurrently. Defendant appeals from the judgment of conviction and the court's denial of his motion for a new trial.[2]

### Contentions on Appeal

Defendant contends that (1) the trial court prejudicially erred in refusing to give defendant's requested instructions on the lesser included offense of possession of marijuana as to count I and possession of a restricted dangerous drug as to count II; (2) the trial court abused its discretion in restricting defendant's cross-examination of prosecution witness Patrick J. Glennon; (3) the court erroneously found the prior convictions to be felony convictions within the meaning of Health and Safety Code, sections 11531 and 11912; and (4) even if the prior convictions were felony convictions for purposes of those Health and Safety Code sections, the trial court erroneously determined that they were also felony convictions for the purposes of impeachment under Evidence Code, section 788, which erroneous determination, as a practical matter, precluded defendant's testifying in his own defense.

### The Facts

At approximately 2 p.m. on October 14, 1968, Patrick J. Glennon, a special deputy sheriff assigned to investigate sales of narcotics in the Twentynine Palms area, was instructed to go to defendant's home and attempt to purchase narcotics. Mr. Glennon testified as follows concerning the events that transpired during the remainder of that day.

Mr. Glennon arrived at defendant's home at approximately 2:30 p.m. Defendant, who was working on a car in his backyard, inquired about $10 that Mr. Glennon's wife owed him. Mr. Glennon said he had a few dollars from selling dope and wanted to pay. Defendant then informed Mr. Glennon that he was "dealing." Mr. Glennon asked in what, and defendant said, "chalks" and "reds" and "hash" (amphetamine sulfate tablets, seconal capsules and hashish, respectively).

Mr. Glennon arranged to buy ten grams of "hash" at $8 per gram. He left, acquired $80 from the sheriff's office, and at approximately 3:30 p.m. returned to defendant's home to close the deal. The transaction was completed by Mr. Glennon retrieving the "hash" from underneath a pipe leaning against a fence, and leaving the money on a table. Mr. Glennon

---

[2]An order denying a motion for new trial is not appealable but may be reviewed on appeal from the judgment of conviction. (Pen. Code, § 1237.)

then went home and made a report. At approximately 8:45 p.m. Mr. Glennon delivered the report and the contraband to Sheriff's Detective Ferronato.

At the time of their meeting, Detective Ferronato instructed Mr. Glennon to purchase the amphetamine sulfate tablets and gave Mr. Glennon $10 in county funds for that purpose. At 8:55 p.m., Mr. Glennon returned to defendant's home. Defendant and his wife Madelyn were present. Mr. Glennon told defendant that he had sold some "hash" and thought he could sell some "whites." Mr. Glennon testified that defendant's wife then went to the "pump room" and returned carrying 10 round waxed paper rolls. Mr. Glennon received one of the rolls and left the $10 on a table, allegedly at defendant's wife's request. At approximately 10:05 p.m., Mr. Glennon delivered this contraband to Detective Ferronato.

Madelyn Tiner, defendant's wife, testified for the defense. Her testimony was as follows concerning the events of October 14, 1968.

Mr. Glennon came to defendant's home at about 2 p.m. Mr. Glennon and defendant talked in the backyard. Mrs. Tiner was also in the backyard, washing and hanging clothes. She overheard their entire conversation. They discussed motorcycles, and jobs, and no other subject except that defendant asked Mr. Glennon for $10 owed him for clothes. Mr. Glennon said he would get the money and left at about 3 p.m. Mr. Glennon returned in an hour, only to inform defendant that he had not been able to get the money and, after about 20 minutes, again left.

Mr. Glennon returned at about 8 p.m. The two men talked in Mrs. Tiner's presence. They did not talk about any narcotics. Mr. Glennon gave defendant $10 and said it was for the clothes.

Finally, Mrs. Tiner testified that she never saw People's Exhibit No. 2 (the hashish) or anything like it around her home before. She did not know if defendant received $80 from Mr. Glennon. She had never heard the term "hash" before, and had heard the term "marijuana" only in newspapers and on TV. She had never seen a tablet like the one from People's Exhibit No. 3 (the amphetamines) before. She had never seen white double-scored tablets before, or heard the term "chalk" or "amphetamines."

### The Instructions

Defendant requested instructions on the lesser but included offenses of possession of narcotics (marijuana) as to count I and possession of restricted dangerous drugs as to count II. The trial court refused to give these instructions, indicating that there was no evidence from which the jury could conclude that defendant was guilty of possession but not of sale

and noting that the only evidence introduced by the defense was a complete denial of the presence of narcotics or restricted dangerous drugs.

The trial court was correct. ■ "[I]t has long been settled that the trial court need not, even if requested, instruct the jury on the existence and definition of a lesser and included offense if the evidence was such that the defendant, if guilty at all, was guilty of something beyond the lesser offense." (*People* v. *Morrison,* 228 Cal.App.2d 707, 712-713 [39 Cal.Rptr. 874]; *People* v. *Stanton,* 274 Cal.App.2d 13, 18 [78 Cal.Rptr. 771].)

### Restriction of Cross-examination

■ The primary witness for the prosecution was Patrick J. Glennon, a special deputy sheriff assigned to undercover investigation of drug activities. Out of the presence of the jury, counsel for defendant sought permission from the court to attempt to impeach Glennon's testimony by showing that in January 1969, three to four months after the date of defendant's acts, Glennon pleaded guilty to a misdemeanor battery charge and was granted probation for this offense, partly on the basis of a statement by the sheriff's office that he was a witness in several pending cases. Defense counsel further sought to show that Glennon himself, while working as an undercover agent, smoked marijuana for his own pleasure on many occasions. It was counsel's theory that an inference could be drawn from these facts that Glennon's testimony was influenced by promises of leniency or hopes of immunity from prosecution with respect to his own misconduct. The court denied defense counsel's request to go into these matters and indicated that he would sustain an objection to any such questions under section 352 of the Evidence Code.

Section 352 of the Evidence Code provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

We think it obvious that great leeway should be accorded the defendant in cross-examining an undercover agent who is the only prosecution eye-witness to the crimes charged. Nevertheless, in this situation, the trial court was well within the discretion granted by Evidence Code, section 352 in excluding this evidence. ■ A witness may not be impeached by evidence of specific acts of misconduct, except for a felony conviction. (Evid. Code, § 787; *People* v. *Kennedy,* 200 Cal.App.2d 814, 819 [19 Cal.Rptr. 683]; *People* v. *Vanderburg,* 184 Cal.App.2d 33, 40 [7 Cal.Rptr. 287].)

■ "A witness may be impeached by showing bias for or against a party and interest in the outcome of the litigation and this because the motives of a witness may be important in evaluating his testimony. [Citation.] But 'for practical reasons . . . the inquiry for impeachment is usually confined to the *prominent* motives for untruthful testimony: *interest* in the suit which *necessarily* tends to bias, and *other circumstances* showing bias which are not too remote.' " (*People* v. *Vanderburg, supra,* at p. 41.) ■ The trial court could and did find that the probative value of the proposed evidence was remote and that it was greatly outweighed by the probability that its admission would necessitate an undue consumption of time and create a substantial danger of confusing the issues. Its exercise of the discretion specifically granted by Evidence Code, section 352 will not be reversed on appeal absent a clear showing of abuse.

### *The Priors—Health and Safety Code, Sections 11531 and 11912*

Sections 11531 and 11912 in division 10 of the Health and Safety Code each provide for a mandatory increased penalty if the defendant "has been previously convicted two or more times of any felony offense described in this division. . . ." By amendment to the indictment, defendant was charged with two such prior felony convictions. As to the first prior conviction it was alleged that on or about October 15, 1959, defendant pleaded guilty in the Municipal Court of the Long Beach Judicial District to a violation of section 11500 of the Health and Safety Code (possession of a narcotic other than marijuana). As to the second prior conviction it was alleged that on or about the 10th day of October 1962 defendant pleaded guilty to another violation of Health and Safety Code, section 11500 in the Municipal Court of the Long Beach Judicial District. Section 11500 is within division 10 of the Health and Safety Code.

On the day of trial, defendant asked and was granted a hearing outside the presence of the jury to determine whether these prior offenses constituted prior felony convictions for the purpose of the increased penalties. Defendant testified and documentary evidence was introduced by the prosecution.

### A. *The First Prior.*

No evidence concerning the first prior was introduced. It was apparently agreed by all parties, however, and defendant admitted, that, as to the first prior, defendant did plead guilty in the Long Beach Municipal Court on or about October 15, 1959, to a violation of section 11500 of the Health and Safety Code and that, as a result of said plea, he was committed to the custody of the Youth Authority. Defendant argued to the trial court, as he

does on appeal, that, under this disposition, the offense was a misdemeanor rather than a felony for purposes of the increased penalty. This very problem has twice been resolved adversely to defendant's position by our Supreme Court. (*People* v. *Berutko,* 71 Cal.2d 84, 95 [77 Cal.Rptr. 217, 453 P.2d 721]; *In re Sanchez,* 65 Cal.2d 556, 557-558 [55 Cal.Rptr. 422, 421 P.2d 430].)

## B. *The Second Prior.*

■ Defendant's attack on the second prior is twofold. He admits that he pleaded guilty pursuant to Penal Code, section 859a to a violation of Health and Safety Code, section 11500 in the Long Beach Municipal Court on October 10, 1962, but he contends that that does not constitute a valid prior felony conviction within the meaning of section 11501 because the record does not support the fact that his plea was knowingly and voluntarily made and for the further reason that in proceedings in that case subsequent to his guilty plea he was not represented by counsel and did not waive the right to counsel.

Defendant's guilty plea was made on October 10, 1962, and must, therefore, be judged by the law prevailing prior to *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] and *In re Tahl,* 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]. (*In re Tahl, supra,* 1 Cal.3d at p. 133.)

It is conceded that defendant was represented by counsel at the proceedings in the Long Beach Municipal Court on October 10, 1962, in which he pleaded guilty. We have reviewed the reporter's transcript of that proceeding,[3] which not only verifies that defendant was there represented by a deputy public defender but also discloses that, before accepting the guilty plea, the court personally asked defendant whether any law enforcement agency had offered him any inducement to plead guilty, whether any force or threats of force had been used against him to induce him to plead guilty and whether he was pleading guilty because, in fact, he was guilty and for no other reason. To the first two questions defendant personally answered "no" and to the third inquiry he responded "yes." The record is ample under pre-*Boykin* and pre-*Tahl* practice to substantiate that defendant's guilty plea was knowingly and voluntarily made. (*People* v. *Price,* 1 Cal. App.3d 982, 988 [82 Cal.Rptr. 55]; *People* v. *Loeber,* 158 Cal.App.2d 730, 735-736 [323 P.2d 136].)

---

[3]The court below did not have before it the transcript of these proceedings. Pursuant to section 459 of the California Evidence Code and after notice and opportunity to be heard in accordance with sections 459, subdivisions (c) and (d) and 455, subdivision (a) of the Evidence Code, we have taken judicial notice of this court record.

The record concerning defendant's representation by counsel in the proceedings subsequent to his plea of guilty on October 10, 1962, is less than satisfactory. Following the guilty plea pursuant to Penal Code, section 859a, the case was certified to the Los Angeles Superior Court. It is clear that the public defender was appointed to represent defendant, for on November 15, 1962, the public defender appeared with defendant in a department of that court at which time criminal proceedings were adjourned for the purpose of an examination and hearing to determine whether defendant was a drug addict pursuant to former Penal Code, section 6451, now Welfare and Institutions Code, section 3051. On November 27, 1962, in another department the hearing was held and defendant was adjudged to be addicted and ordered committed pursuant to this adjudication. The documentary evidence does not disclose, however, whether on this occasion defendant was represented by counsel. Defendant testified that he did not remember being represented at that proceeding by an attorney, but his recollection was vague and not specific. In fact, he had great difficulty distinguishing between the municipal court proceedings and the superior court proceedings. He remembered that he was represented by counsel on at least one occasion.

Subsequently, on April 11, 1967, criminal proceedings were resumed in the superior court, and, on the court's own motion, the charges were dismissed pursuant to section 3200 of the Welfare and Institutions Code. Again, it cannot be ascertained from the documentary evidence of that proceeding whether defendant was represented by counsel.

We have concluded that even if defendant was not represented by counsel at the proceedings in the Los Angeles Superior Court subsequent to the entry of his guilty plea, his plea of guilty to a violation of section 11500 of the Health and Safety Code on October 10, 1962, constituted a valid prior felony conviction within the meaning of sections 11531 and 11912 of the Health and Safety Code.

■ What constitutes a prior felony conviction within the meaning of sections 11531 and 11912 is specifically set forth in Health and Safety Code, section 11504, which provides: "As used in this article 'felony offense,' and offense 'punishable as a felony' refer to an offense for which the law prescribes imprisonment in the state prison as either an alternative or the sole penalty, *regardless of the sentence the particular defendant received.*" (Italics supplied.)

It is clear from the language used that it is the plea or verdict of guilty in the prior offense that is significant, not the sentence, commitment or judgment. (See *People* v. *Berutko, supra,* 71 Cal.2d 84, 95; *In re Sanchez,*

*supra,* 65 Cal.2d 556, 557-558.) ▇▇▇ As previously noted, the record amply demonstrates that defendant intelligently and voluntarily pleaded guilty, and, even if his right to counsel at the commitment or sentencing stage was abridged, only the judgment, commitment or sentence would be invalidated, not the conviction. (See *In re Boyce,* 51 Cal.2d 699, 700-701 [336 P.2d 164] and cases there cited; *People* v. *Banks,* 53 Cal.2d 370, 390-391 [1 Cal.Rptr. 669, 348 P.2d 102]; *People* v. *Robinson,* 184 Cal.App.2d 69, 79 [7 Cal.Rptr. 202].)

We observe also that the dismissal of the charges pursuant to section 3200 of the Welfare and Institutions Code did not preclude the use of this conviction as a prior felony conviction under Health and Safety Code, sections 11531 and 11912. Section 3200 expressly provides: "Such dismissal shall have the same force and effect as a dismissal under Section 1203.4 of the Penal Code, except the conviction is a prior conviction for purposes of Division 10 of the Health and Safety Code."

### The Priors—Evidence Section 788

▇▇▇ Defendant contends that even if the priors were prior felony convictions within the meaning of Health and Safety Code, sections 11531 and 11912, they were not prior felony convictions within the meaning of Evidence Code, section 788 permitting the use of prior felony convictions for the purpose of impeachment and that, because the court erroneously ruled that they were, defendant was, as a practical matter, precluded from testifying in his own defense.

In fairness to the trial judge, it should be noted that this possible distinction was never brought to his attention. Defendant did not take the stand, so the prosecution could not attempt to use the priors for impeachment. It is true, that in discussing with the attorneys the effect of his ruling with respect to the second prior and the defendant's admission of the priors, the judge indicated that the priors could be used to impeach defendant should he take the stand and testify, but as noted, the possibility that the priors might be valid prior felony convictions for one purpose and not the other was never suggested, and the problem was never presented to him in a manner requiring a ruling.

We further note that defendant's assertion that he refrained from testifying in his own defense because of the court's indication that the priors could be used for impeachment is only inferentially supported by the record. The transcript discloses that defense counsel was seriously concerned with the fact that the priors would be paraded before the jury in the event defendant denied them. That was the reason he requested a hearing on their validity outside the presence of the jury. The record is silent, however,

with respect to defendant's reason for not taking the stand in his own defense after the court had made its ruling and he had admitted the priors.

The distinction urged by defendant is plausible even if anomalous. As previously pointed out, what constitutes a prior felony conviction within the meaning of Health and Safety Code, sections 11531 and 11912 is determined by reference to the provisions of Health and Safety Code, section 11504. On the other hand, what constitutes a prior felony conviction within the meaning of Evidence Code, section 788 is determined by reference to the provisions of Penal Code, section 17. (See *People* v. *Zaccaria,* 216 Cal.App.2d 787, 789 [31 Cal.Rptr. 383]; *People* v. *Gotham,* 185 Cal.App.2d 47, 56 [8 Cal.Rptr. 20].) Furthermore, the determination for purposes of the Health and Safety Code sections is made by reference to the law existing at the time of the current offense, for it relates to increased punishment for the current offense. (*People* v. *Berutko, supra,* 71 Cal.2d 84, 95; *In re Sanchez, supra,* 65 Cal.2d 556, 558), whereas, the determination as to whether a prior offense constituted a felony conviction for impeachment purposes is determined by reference to section 17 as it existed at the time of the prior offense. (*People* v. *Zaccaria, supra,* 216 Cal.App.2d 787, 789; *People* v. *Gotham, supra,* 185 Cal.App.2d 47.)

With these principles in mind, it appears that the first prior was not a felony conviction that could be used for impeachment purposes. It was alleged and admitted that the plea in the first prior occurred on October 15, 1959. The 1959 legislative amendment to Penal Code, section 17 became effective a few weeks earlier on September 18, 1959. The 1959 amendment to Penal Code, section 17 added the following provision: "Where a court commits a defendant to the Youth Authority upon conviction of a crime punishable, in the discretion of the court, by imprisonment in the state prison or fine or imprisonment in a county jail, the crime shall be deemed a misdemeanor." (Stats. 1959, ch. 532, § 1, p. 2498.)

On October 15, 1959, when defendant pleaded to this violation of Health and Safety Code, section 11500, it prescribed an alternative county jail sentence for a first offense (Stats. 1959, ch. 1112, § 3, p. 3193), and so far as the record shows, this was defendant's first drug conviction. Since he was committed to the Youth Authority, this offense was a misdemeanor under Penal Code, section 17 as it then existed.

On the other hand, it appears that the second prior did constitute a felony conviction for impeachment purposes. The second prior consisted of a guilty plea on October 10, 1962, to a violation of Health and Safety Code, section 11500 together with the admission by defendant of a charged prior

conviction of a violation of section 11500.[4] At the time of defendant's plea to the second prior, section 11500 of the Health and Safety Code provided that if the defendant had been previously convicted once of any felony offense described in division 10 of that code, the only permissible punishment was imprisonment in state prison for a minimum term of five years. Health and Safety Code, section 11504 defining a prior felony conviction for purposes of section 11500 had been enacted in 1961 and was applicable to defendant at the time of his plea to the second prior. (*People* v. *Berutko, supra,* 71 Cal.2d 84, 95; *In re Sanchez, supra,* 65 Cal.2d 556, 558; *People* v. *Garcia,* 227 Cal.App.2d 345, 352-353 [38 Cal.Rptr. 670].) For the second prior, therefore, the court had no discretion to impose an alternative county jail sentence. The mandatory sentence was confinement in state prison.

Penal Code, section 17 as it existed in 1962 provided in pertinent part: "A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime is a misdemeanor. When a crime, punishable by imprisonment in the state prison, is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison." (Stats. 1959, ch. 532, § 1, p. 2498, *supra.*) Inasmuch as the trial court had no discretion to impose a county jail sentence with respect to the second prior conviction, it constituted a felony for impeachment purposes within the plain language of Penal Code, section 17 as it then read.

Nor are we persuaded that the second prior did not constitute a valid felony conviction for impeachment purposes because of the alleged abridgment of defendant's right to counsel in that case at proceedings subsequent to his plea. Under Penal Code, section 17 as it existed in 1962, the sentence actually received was a determinative factor only when the offense permitted an alternative county jail sentence. As previously noted, even if defendant was not represented by counsel at the subsequent proceedings in the superior court, only his commitment as a narcotics addict and the subsequent dismissal of the charges pursuant to Welfare and Institutions Code, section 3200 would be subject to attack, not his plea. (*In re Boyce, supra,* 51 Cal.2d 699, 700 and cases there cited.) Even if defendant's subsequent commitment as an addict and the subsequent dismissal of the charges were invalid, his plea of guilty would stand, and it is the plea of guilty that constitutes the conviction. (*People* v. *Banks, supra,* 53 Cal.2d

---

[4]This appears both in the documentary evidence before the trial court and the reporter's transcript of the guilty plea proceedings of which we have taken judicial notice. (See fn. 3, *ante.*)

370, 390-391; *People* v. *Robinson, supra,* 184 Cal.App.2d 69, 79.)
█ Even in a crime which permits an alternative county jail sentence, when the defendant has entered a plea but judgment has not been pronounced, the defendant stands convicted of a felony. (*People* v. *Banks, supra; People* v. *Robinson, supra.*) The propriety of this rule is even more obvious where the only possible sentence was to state prison.

█ We further note that the subsequent dismissal of the charges pursuant to Welfare and Institutions Code, section 3200 would not have precluded the use of the second prior for impeachment purposes had defendant taken the stand. Section 3200 provides that, except for purposes of division 10 of the Health and Safety Code, such dismissal shall have the same force and effect as a dismissal under section 1203.4 of the Penal Code. Notwithstanding the dismissal of charges pursuant to section 1203.4, however, the prior conviction may be shown for impeachment purposes. (*People* v. *O'Brand,* 92 Cal.App.2d 752, 756 [207 P.2d 1083]; *People* v. *James,* 40 Cal.App.2d 740, 747 [105 P.2d 947].)

The situation confronting us, then, is this. The question whether the priors could be used to impeach defendant should he take the stand and testify was not actually presented to the trial court. Apparently, however, defense counsel took the trial judge's statement that the priors could be so employed to be a ruling. Even if the statement were a ruling, however, and even if it was wholly erroneous, defendant was not compelled to refrain from taking the stand and testifying in his own defense. He had every right to do so, and if the prosecution had sought to impeach him by proving the priors and the court had allowed such impeachment, the propriety of such impeachment could have been challenged on appeal. This defendant did not do. Giving him the benefit of any doubt as to the reason for his refraining from taking the stand, defendant was represented and advised by obviously competent counsel, who, faced with the trial court's statement on this intricate legal problem and the possibility of impeachment, deliberately and knowingly advised defendant not to take the stand. Under these circumstances, even if the trial judge's statement indicating that both prior felony convictions could be used for impeachment was wholly erroneous, it is doubtful that this would be cause for reversal. █ When a defendant with the advice and representation of competent counsel deliberately chooses to employ a particular trial tactic based upon his attorney's good-faith assessment of the law and the practical situation, a defendant may not later disclaim the tactic because his attorney's assessment of the law or his evaluation of the situation turns out to have been mistaken. (Cf. *McMann* v. *Richardson,* 397 U.S. 759 [25 L.Ed.2d 763, 90 S.Ct. 1441, 1448-1449].)

■ Moreover, as we have seen, the trial judge's statement was not wholly erroneous. The second prior could have been used to impeach defendant had he taken the stand and testified. It would be sheer speculation for us to conclude that defendant would have taken the stand and testified had he known that he could be impeached by the showing of only one prior felony conviction rather than two.

The purported appeal from the order denying defendant's motion for new trial is dismissed. The judgment is affirmed.

Gardner, P. J., and Tamura, J., concurred.