Lynn SAMPLE, Petitioner-Appellant,

v.

Frank A. EYMAN, Respondent-Appellee.

No. 72-1555.

United States Court of Appeals,
Ninth Circuit.

Oct. 31, 1972.

Lloyd D. Brumage, of Karman & Brumage, Casa Grande, Ariz., for petitioner-appellant.

Gary K. Nelson, Atty. Gen., Peter Van Orman, Asst. Atty. Gen., Phoenix, Ariz., for respondent-appellee.

Before JERTBERG and ELY, Circuit Judges, and RENFREW,* District Judge.

RENFREW, District Judge:

Appellant was convicted of aggravated assault by a jury in Superior Court, Pinal County, Arizona, on June 29, 1970. Under Arizona's multiple offender statute, A.R.S. § 13–1650, he was sentenced to a term of not less than nine and not more than ten years in the Arizona State Prison. Appellant's conviction was affirmed by the Arizona Supreme Court, State v. Sample, 107 Ariz. 407, 489 P.2d 44 (1971), and he appeals to this Court from a denial of his petition for a writ of habeas corpus by the United States District Court for the District of Arizona on February 14, 1972. Appellant raises four issues. The first concerns the admissibility of certain oral and written statements made by appellant to the arresting agents following his arrest. The second concerns the admissibility of certain objects taken from appellant's home after that arrest. The remaining two involve appellant's prior conviction in the Texas State Court. He urges that that conviction was unconstitutional because of lack of counsel at sentencing. Under these circumstances it is contended that the present sentence is constitutionally infirm and the threat

* Honorable Charles B. Renfrew, United States District Judge, Northern District of California, sitting by designation.

of the use of the prior conviction for impeachment purposes was a denial of due process of law.

## I

Following the death of his wife, appellant was arrested outside his home at 7:30 A.M. and taken to the police station. Appellant was informed of his constitutional rights as set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thereafter the Chief of Police declined to take a statement from him at that time because appellant was nervous and upset. Nevertheless, the police did ask appellant what instrument he had used to strike his wife. Appellant responded and his answer was admitted into evidence at the trial.

At 2:00 P.M. the Justice of the Peace refused to arraign appellant, doubting appellant's ability to comprehend the charges in view of his emotional state. Furthermore, the magistrate indicated that he would not arraign appellant until he had received the advice of court-appointed counsel. Defense counsel was then appointed, and appellant acquiesced in the appointment. Despite this, the police took a written statement from appellant shortly thereafter without the presence of counsel, and this written statement was also admitted into evidence.

██ ██ Under *Miranda* it is clear that if an individual indicates his desire for counsel, all interrogation must cease until an attorney is present. Miranda v. Arizona, *supra*, at 474, 86 S.Ct. 1602. In this case the magistrate, with ample reason, felt appellant to be incapable of making this decision and determined himself that the presence of counsel was required. The evidence supporting the magistrate's decision is clear and adequate, including the actions and observations of the Chief of Police. We therefore hold that the written statement which was elicited from appellant without the presence of counsel should not

have been admitted in evidence, and that its admission constituted an infringement of appellant's federally protected rights under the teaching of *Miranda*.

██ ██ Appellee contends that in view of certain statements spontaneously uttered by appellant upon seeing the police for the first time, the admissibility of which is undisputed,[1] such error as has occurred in the present case is harmless error. Under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966), before a constitutional error can be held harmless, the court must be convinced that it was harmless beyond a reasonable doubt. See also Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1968); Tafoya v. Eyman, 455 F.2d 1265 (9th Cir. 1972). Viewed in the setting of this case, we are not so convinced.

██ We need not reach the other errors alleged with respect to the admission in evidence of other of appellant's statements. We do note, however, that once it has been determined that a person taken into custody is too upset to assert or waive his rights knowingly and intelligently under *Miranda*, all questioning should cease until such time as that person is clearly capable of so responding.

## II

Appellant also contends that the admission in evidence over objection of certain objects seized from his home, after he had been taken to and detained at the police station, constituted a violation of his Fourteenth Amendment rights as established in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1960) and Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1913), and that the trial court's admission of such evidence was constitutionally impermissible.

██ Appellee concedes and the record below clearly indicates that this was not a search incident to a lawful arrest, as

---

1. Appellant stated, "My God, I killed my wife."

set forth in Chimel v. California, 395 U.
S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685
(1969), and under the circumstances
present, a search warrant was necessary.
The search was not conducted contempo-
raneously with the arrest, thus distin-
guishing this case from Vale v. Louisi-
ana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.
Ed.2d 409 (1969), and there was no dan-
ger that evidence would be secreted or
destroyed since the empty dwelling was
being guarded by a policeman. The ap-
pellee having given no reason why a
warrant could not be obtained, we find
the failure to have done so constitutional
error. Again, we are not convinced that
the introduction at trial of the illegally
seized items, which included a bloody
bowl, a belt, a belt buckle, a broken bot-
tle, sheets and pillowcases, and certain
photographs, was harmless error under
Chapman v. California, *supra*.

### III

Finally, appellant challenges his
prior Texas conviction for murder as
unconstitutional, due to his lack of coun-
sel at the sentencing, which, it is con-
tended, renders the present sentence un-
der the multiple offenders statute con-
stitutionally infirm, and the threat of
use of the prior conviction for impeach-
ment purposes, a denial of due process
of law.

In view of our holdings, we need
not reach these questions except to note
that, while sentencing is a "critical
stage" of the criminal process, as de-
fined in United States v. Wade, 388 U.S.
218, 87 S.Ct. 1926, 18 L.Ed.2d 1149
(1967), requiring the presence of coun-
sel, Rule 32(a)(1) of the Federal Rules
of Criminal Procedure, and Martin v.
United States, 182 F.2d 225 (5th Cir.
1950); McKinney v. United States, 93
U.S.App.D.C. 222, 208 F.2d 844 (1953);
Mempa v. Rhay, 389 U.S. 128, 88 S.
Ct. 254, 19 L.Ed.2d 336 (1967), it is
well settled that the underlying convic-
tion stands, and appellant's only remedy
is resentencing, a course of action un-
necessary under today's holding. Walsh

v. United States, 374 F.2d 421 (9th Cir.
1967).

Similarly, the issues raised by the use
of a constitutionally infirm sentencing
procedure for purposes of impeachment
need not be reached here, though we
suggest the trial court take note of the
problem should it again arise.

For the foregoing reasons, the Dis-
trict Court's order is reversed. Upon
remand, the District Court will hold the
appellant's petition for habeas relief in
abeyance for a reasonable period of
time, not exceeding ninety days, in order
to afford the Arizona authorities, should
they so choose, to retry the appellant
without the introduction of the inadmis-
sible evidence which has been discussed.
If a retrial in the Arizona courts is not
recommended within such prescribed pe-
riod, then the District Court should grant
the appellant's petition for habeas relief.
Reversed and remanded, with directions.

JERTBERG, Circuit Judge (dissent-
ing):

I respectfully dissent from the majori-
ty opinion. I adopt as my dissenting
opinion the opinion of the Supreme
Court of Arizona, rendered by that
Court on direct appeal from the judg-
ment of conviction of appellant imposed
by the Superior Court of Pinal County,
Arizona, appearing in 107 Ariz. 407, 489
P.2d 44 (September 28, 1971); reh.
den. October 27, 1971, which opinion af-
firmed the judgment of conviction. In
my view that opinion correctly disposed
of the issues presented in the instant ap-
peal, and reads as follows:

Lynn Sample was charged with the
murder of his wife and convicted by a
jury of aggravated assault. From the
judgment of guilt to the assault and
of a prior conviction, as well as a sen-
tence of not less than nine nor more
than ten years, defendant appeals.

We are called upon to determine:

1. Did the trial court commit error
in admitting certain statements and a
confession made by appellant?

2. Was the search of appellant's premises illegal?

3. Was the record of appellant's previous conviction constitutionally infirm, thereby rendering appellant's sentence excessive?

4. Was it error for the trial court to deny appellant's motion to prevent the County Attorney from using the invalid conviction for impeachment purposes?

The facts of the case are as follows. Patsy Sample was found dead in the bedroom of her mobile home on the 15th day of February, 1970. The body showed signs of a severe beating, i.e. multiple contusions and lacerations about the head, face, legs, back, and arm areas. Medical testimony established the cause of death as a perforation in the intestinal wall with its resultant hemorrhaging and infection. The perforation, resulting from a rapid compacting of the intestine causing trapped air and bursting, was placed in time, by an autopsy, as having occurred between 8 P.M. on the 13th and 8 P.M. on the 14th. Testimony of a friend revealed that the victim was last seen alive at 10 A.M. on the 14th at which time she complained of severe abdominal pain. This prosecution and verdict followed.

## ADMISSION OF THE STATEMENTS

Chief of Police Guy Hill of the Mammoth Police Department was the first officer on the scene. He was summoned to the trailer by Mrs. Serna after Mr. Sample went to her for help. Upon his arrival, Mr. Sample spontaneously exclaimed, "My God, I killed my wife." A quick check of the bedroom revealed the corpse. Chief Hill immediately placed his suspect under arrest and read him the "Miranda" card. He placed the defendant in the car and forthwith drove to the station. Upon arrival at the station, Chief Hill again read the defendant his rights. Mr. Sample indicated a willingness to talk, but no extensive interrogation took place. Chief Hill's only inquiry was what had made the marks on her body. The defendant indicated they were made by a belt, a fact which he has never denied.

At 2:00 o'clock that afternoon the defendant was arraigned. The Justice of the Peace testified as follows:

"Q You advised him of the right— that he had a right to have a court appointed attorney if he couldn't afford one?

"A I did.

"Q Did he indicate to you that he wanted an attorney?

"A At that time he was shaken and crying so hard that I advised him that we would try to get an attorney appointed for him before we made any further proceedings with it.

"Q You then undertook to get an attorney appointed for him?

"A Yes."

At 5 P.M. on the same day, defendant requested and was allowed, after rewarning and the signing of a waiver form, to make a statement which statement was reduced to writing. The defendant subsequently moved to suppress the statement concerning the belt and the written statement, which motion was denied.

It is true that the evidence establishes that the defendant was nervous and upset—at times seriously so. However, at no time did either the police or the court seek the advantage of the moment. He was neither extensively interrogated nor requested to enter a plea in his moments of stress.

An examination of the record sustains the finding of the lower court at the voluntariness hearing, to wit: the statements were voluntary and admissible. The record reveals all the manifest indicia of comprehension of his rights, waiver thereof, and a continuing desire to make a statement. We do not have to plumb the depths of the defendant's mind to determine ab initio the issue of voluntariness. The police, as reasonable men, may rely on consistent objective manifestations of consent and waiver by

a suspect. There is nothing inherently inconsistent between the defendant's condition, which we are sure to a large extent is universal under the circumstances, and valid waiver. As the trial court noted:

"I believe a fair resume of the testimony is that the defendant's condition remained nervous and upset throughout the day. However, again I believe the defendant was aware he was at the police station, that he was in custody. And I believe that both of these statements are voluntary and will be admitted."

Similarly, we are convinced that the post-arraignment statement was voluntarily made. As Chief Hill testified:

" * * * [H]e asked me if I was going to let him make a statement, and I told him if he wanted to make a statement at this time, that I would let him make a statement."

The fact that it was made without notification to or with the permission of appointed counsel is of no consequence under the facts of this case. State ex rel. Berger v. Superior Court, 105 Ariz. 553, 468 P.2d 580 (1970); cf. Reinke v. United States, 405 F.2d 228 (9th Cir. 1968). Under such circumstances, the written statement was admissible.

## SEARCH AND SEIZURE

The search complained of occurred after Mr. Sample was taken to the police station. Chief Hill, after arresting the defendant and placing him in custody, returned to the mobile home and, without a warrant, searched the premises and seized several items. This was about two hours later. Primarily the items consisted of the belt found on the floor, the buckle found on the dresser, a sheet from the bed, two pillow cases, a bowl found on the bedroom floor, a liquor bottle found in a waste basket, and several miscellaneous items. A motion to suppress was argued and denied.

This was not a search incident to a lawful arrest, as the defendant was already under arrest and in custody. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Nor is it supported by "exigent" circumstances of the necessity of preserving destructible evidence. But see Stevens v. State (Alaska), 443 P.2d 600 (1968). The evidence is also clear that a magistrate was available and that Chief Hill could have easily obtained a search warrant before returning to the mobile home.

We believe that the warrantless search was nonetheless permissible and the fruits of the search admissible against the defendant. We find nothing in the Constitution or common sense which should prevent the police from making a warrantless search of the premises in which the victim is found dead and this is true even if the suspect exercised joint control of said premises along with the victim.

The United States Supreme Court has stated:

"The Fourth Amendment provides that, 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against *arbitrary* invasions by governmental officials. The Fourth Amendment thus gives concrete expression to a right of the people which 'is basic to a free society.' Wolf v. People of State of Colorado, 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 [1785]. As such, the Fourth Amendment is enforceable against the States through the Fourteenth Amendment. Ker v. State of California, 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726 [735]." Camara v. Municipal Court, 387 U.S.

523, 528, 87 S.Ct. 1727, 1730, 18 L. Ed.2d 930, 935 (1967). (Emphasis added.)

"Thus, although '[t]he recurring questions of the reasonableness of searches' depend upon 'the facts and circumstances—the total atmosphere of the case,' *id.*, [United States v. Rabinowitz, 339 U.S. 56] at 63, 66, 70 S. Ct., [430] at 434, 435, [94 L.Ed. 653, at 659, 660] (opinion of the Court), those facts and circumstances must be viewed in the light of established Fourth Amendment principles." Chimel v. California, supra at 395 U.S. 752, 765, 89 S.Ct. 2034, 2041, 23 L. Ed.2d 685, 695.

Reviewing the facts and circumstances in this case, "the total atmosphere", we are convinced that the search was reasonable within the framework of the Fourth Amendment and the historical reasons for its existence. The traditional right of citizens to be free from unreasonable searches and seizures and unreasonable and unnecessary invasions of their privacy is not violated when the premises upon which a deceased victim is found are searched without a warrant. The need for all citizens and particularly potential victims such as this to effective protection from crime, particularly while in their own home, would indicate that a warrantless search of the premises is not made unreasonable or unconstitutional by the fact that the defendant exercises joint control over the premises. So much of the opinion in State v. Lenahan, 12 Ariz. App. 446, 471 P.2d 748 (1970) which is to the contrary is reversed.

## PRIOR CONVICTION

The defendant was previously convicted in 1953 in Texas of murder with malice. The prosecution alleged the prior conviction and the jury found it to be true as alleged. Enhanced punishment was levied under § 13–1650 A.R.S. (as amended) which reads in part as follows:

"A. A person who has been *convicted* in any court without this state

of an offense which, if committed within this state, would be punishable by the laws of this state * * * shall be punished for any subsequent crime committed within this state in the manner prescribed by 13–1649 * * *." (Emphasis added.)

§ 13–1649 A.R.S., as applicable to this case, provides for an enhanced punishment not to exceed ten years in the state prison.

The record reveals that the defendant was represented by counsel at his previous trial but that he was not so represented at his sentencing. Therefore, he contends that the conviction was constitutionally infirm and cannot properly serve as the basis for enhanced punishment. We cannot concur. It is uncontroverted that a criminal defendant has a right to counsel guaranteed by the Sixth Amendment, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963), and that extends to all critical stages, Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), including sentencing. Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); Lee v. State, 99 Ariz. 269, 408 P.2d 408 (1966). As noted in the Martin case, however, lack of counsel at the sentencing invalidates only the sentence imposed. Martin v. Eyman, 102 Ariz. 341, 429 P.2d 660 (1967). The integrity of the verdict and the judgment of guilt or conviction is not thereby destroyed.

Defendant's prior conviction was constitutionally sound, cf. State v. Silva, 78 N.M. 286, 430 P.2d 783 (1967); Dallas v. State (Fla.App.), 229 So.2d 891 (1969); People v. Tiner, 11 Cal.App.3d 428, 89 Cal.Rptr. 834 (1970), and could be used to enhance the punishment under § 13–1650 A.R.S.

## IMPEACHMENT

Defendant argues, that, if the conviction was infirm, it was improper for the trial court to deny his motion to prevent impeachment by the prior felony conviction when the defendant took the stand to testify. Having held the conviction

itself to be sound, we hold that impeachment would be possible and that the trial court did not err in denying the motion. For the general rule on impeachment on cross-examination by the showing of prior felony conviction see State v. Sorrell, 85 Ariz. 173, 333 P.2d 1081 (1959); State v. Johnson, 99 Ariz. 52, 406 P.2d 403 (1965); State v. Enriquez, 102 Ariz. 402, 430 P.2d 422 (1967).

Judgment affirmed.

The order appealed from should be affirmed.