[Crim. No. 43546. Second Dist., Div. Four. Sept. 24, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES MILES, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Diane M. L. Tan, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert H. Anderson, Lisa B. Lench and Terry Fujimoto, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McCLOSKY, J.—Appellant Charles Miles was charged by information with two counts of robbery. (Pen. Code, § 211.) Count I alleged a violation which occurred on June 13, 1982. Count II alleged a violation which occurred on June 14, 1982. The jury convicted appellant on count I. On count II, the jury found defendant guilty of the lesser included offense of attempted robbery. On March 26, 1984, we filed our earlier opinion in this matter. On May 24, 1984, the California Supreme Court granted a petition for hearing and on July 25, 1985, retransferred this matter to us for reconsideration in light of *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111].

### CONTENTIONS

Appellant contends that the trial court erred in denying his motion to exclude a prior arson conviction pursuant to *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], and that the trial court committed reversible error in refusing his request to play to the jury a tape recording crucial to his defense.

### FACTS

At about 9:40 p.m. on June 13, 1982, a man wearing a black leather jacket and black cap entered and robbed the Church's Fried Chicken store located at 4411 South Western Avenue by holding his hand up under his closed jacket as if he had a concealed weapon and demanding and receiving cash register money. The store's senior manager, Bobby Gene Tillie, later identified appellant as that man.

At about 1 p.m. the following day, June 14, 1982, someone went to the same Church's Fried Chicken store and ordered food from Patricia Nobles

and then indicated to Nobles that he wanted the money from the cash register. At that time, the person had his hand in his pocket as if he held a pointed gun. Nobles filled a sack with money but the person left the store without taking it. At trial, Nobles could not identify appellant as the man who attempted to rob her. Melba Lewis, the assistant manager, was present at the store while the person attempted to rob Nobles and identified appellant as that person.

After his attempt to rob Nobles, the man went across the Church's store parking lot to a donut shop. At 1 p.m. or shortly thereafter, Tillie drove into the parking lot and saw appellant at a phone booth. He recognized appellant. Tillie then went inside the Church's store and told Lewis that the person who had robbed him the previous night was at a phone booth next door. Lewis told Tillie that Nobles had just been robbed. Tillie then called the police.

At 1:36 p.m. on June 14, 1982, a police department operator received a phone call from a male person who identified himself as Charles Miles. The caller asked the police to pick him up on an outstanding warrant, at an address in the 4700 block on South Western Avenue. At about 2 p.m., Officer Thompson was directed to the address to pick Miles up. Officer Thompson had been investigating the crime which took place at Church's one hour before. He had been given a description of the suspect by the victims and when he saw appellant, he felt that appellant fit the description of the suspect. Thompson then drove to Church's, picked up Lewis, and drove her to appellant's location. Lewis recognized and identified appellant, who was in the back seat of a second police car.

Appellant's defense at trial was mistaken identity and alibi. He, as the sole defense witness, testified as follows: He had neither robbed Church's nor been inside that store on either day. On June 13, he drank and smoked marijuana from 1 to 7 p.m., 8:30 or 9 p.m. in an empty parking lot on Western between 46th and 47th streets and then took a bus to Figueroa and Florence where he checked into a motel room and fell asleep.

He ate, drank liquor and smoked marijuana during the morning of June 14 and then went to his cousin's furniture store at 4716 South Western Avenue. He had intended to go all morning to call the police and turn himself in. On direct examination he testified that he called the police at about 1:36 p.m. to pick him up on an outstanding warrant for his probation violation. He then fell asleep. He further testified that he was "kind of high at the time" and could not understand the police operator.

Before trial, pursuant to *People* v. *Beagle, supra,* 6 Cal.3d 441, defense counsel moved to exclude appellant's prior arson conviction. The trial court

denied the motion based on its interpretation of section 28, subdivision (f) of article I of the state Constitution (hereafter section 28) as adopted on June 8, 1982, as part of Proposition 8.[1]

Counsel for appellant also moved, under section 402 of the Evidence Code, to admit into evidence the tape recording made by the police department of a telephone call made by a man who identified himself as Charles Miles and who requested that the police pick him up at 4718 South Western. It was argued that this tape recording was relevant in proving: (1) that appellant did in fact place the call to turn himself in to the police, "otherwise, the jury might not believe he ever made that phone call"; and (2) that he was intoxicated at 1:36 p.m. on June 14, 1982.[2] Appellant's counsel further contended that the jury should have heard the tape because that was the best way the fact finder could be informed of the physical condition of appellant when he turned himself in. Appellant also intended to argue, "Why would anyone rob Church's Chicken or try to rob Church's Chicken and then immediately call the police to pick him up on a warrant?"

The trial court denied appellant's motion under Evidence Code section 352, finding that the tape had very little, if any, probative value "because it would only be cumulative to what is already known to the jury through previous testimony." The trial judge also ruled that playing the relevant part of the tape, which was estimated to be five minutes long, would necessitate undue consumption of time and create a substantial danger of confusing the issues or misleading the jury.

DISCUSSION

I

The Tape Recording

"The duty to balance 'probative value' against 'danger of undue prejudice' upon proper request is a duty imposed upon the trial court in the first instance. (Evid. Code, § 352; see also *People* v. *Beagle, supra,* 6 Cal.3d at pp. 453-454.) The trial court is statutorily directed to exclude otherwise

---

[1]Section 28, subdivision (f) reads in part, as follows: "*Use of Prior Convictions.* Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding." (Italics added.)

[2]Prior to the court's ruling on the motion, the parties agreed that if the motion were denied, it would be stipulated that "on June 14, 1982, at 1:36 p.m. the police received a call from a male person identifying himself as Charles Miles who asked the police to pick him up on a warrant at 4718 South Western." After the ruling, the stipulation was read to the jury.

material, relevant evidence only 'if its probative value is *substantially out-weighed* by the probability that its admission will . . . create *substantial danger of undue prejudice*, . . .' (Evid. Code, § 352, italics supplied.) ■ The trial court's exercise of discretion under Evidence Code, section 352 will not be reversed on appeal absent a clear showing of abuse. (*People* v. *Tiner,* 11 Cal.App.3d 428, 435 [89 Cal.Rptr. 834] [disapproved on another point in *People* v. *Beagle, supra,* 6 Cal.3d at pp. 451-452]; *People* v. *Hayden,* 30 Cal.App.3d 446, 449 [106 Cal.Rptr. 348] [disapproved in part on other grounds in *People* v. *Rist* (1976) 16 Cal.3d 211, 222, fn. 10 (127 Cal.Rptr. 457, 545 P.2d 833)].)'' (*People* v. *Delgado* (1973) 32 Cal.App.3d 242, 251 [108 Cal.Rptr. 399], disapproved in part on other grounds in *People* v. *Rist, supra,* 16 Cal.3d at p. 222, fn. 10.)

■ Appellant was the sole defense witness. His credibility was a matter of the utmost importance to his defense. The actual tape recording of the conversation with the police operator was of substantial probative value to the defense as it may have shed light on appellant's testimony. The tape recording arguably corroborated the defense that appellant was "loaded" at 1:36 p.m. on June 14, 1982, and that it was he who placed the call. If it was found by the trier of fact to be corroborative in either or both respects, the argument that the identification by the witnesses for one or the other of the crimes was mistaken might well have been successful.

Playing the tape recording presented no undue-consumption-of-time problem, nor was there any danger that its playing could have confused or misled the jury. The trial court abused its discretion under Evidence Code section 352 when it excluded the tape recording and refused to allow it to be played to the jury.

That abuse of discretion requires a reversal.

## II

Since this matter may be retried and since the offenses with which appellant was charged occurred after the effective date of article I, section 28, which applies to this case (see *People* v. *Smith* (1983) 34 Cal.3d 251, 257-258 [193 Cal.Rptr. 692, 667 P.2d 149]), we consider the question of the use of the prior felony conviction of arson for impeachment purposes in light of *People* v. *Castro, supra,* 38 Cal.3d 301.

We first observe, however, that at the trial it was appellant himself who testified on direct examination by his own counsel that he telephoned the police asking them to pick him up for his violation of probation on his prior felony conviction. Under that circumstance, respondent's introduction of

evidence of his prior arson felony conviction did not itself result in prejudicial error. (See *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

■ Appellant contends that his prior arson conviction had "no direct bearing on the credibility of the witness" and therefore should have been excluded and that the admission of his prior arson conviction deprived him of due process of law.

Respondent argues that section 28, subdivision (f) overruled *People* v. *Beagle, supra,* 6 Cal.3d 441, and other judicial restrictions on the admission of prior felony convictions for impeachment purposes and allows unlimited impeachment with any and all prior felony convictions.

A

The plurality (lead) opinion in *People* v. *Castro, supra,* 38 Cal.3d 301, in an effort to "harmonize" or "reconcile" the newly passed subdivisions (d) and (f) of article I, section 28 of the California Constitution (Prop. 8), held that the "intention of the drafters of the initiative was to restore trial court discretion as visualized by the Evidence Code and to reject the rigid, black letter rules of exclusion which we had grafted onto the code by the *Antick* [*People* v. *Antick* (1975) 15 Cal.3d 79 (123 Cal.Rptr. 475, 539 P.2d 43); *People* v. *Rist* (1976) 16 Cal.3d 211 (127 Cal.Rptr. 457, 545 P.2d 833); *People* v. *Rollo* (1977) 20 Cal.3d 109 (141 Cal.Rptr. 177, 569 P.2d 771); *People* v. *Woodward* (1979) 23 Cal.3d 329 (152 Cal.Rptr. 536, 590 P.2d 391); *People* v. *Fries* (1979) 24 Cal.3d 222 (155 Cal.Rptr. 194, 594 P.2d 19); *People* v. *Spearman* (1979) 25 Cal.3d 107 (157 Cal.Rptr. 883, 599 P.2d 74); *People* v. *Barrick* (1982) 33 Cal.3d 115 (187 Cal.Rptr. 716, 654 P.2d 1243)] line of decisions." (*People* v. *Castro, supra,* 38 Cal.3d at p. 312.) The lead opinion went on to say that the initiative by which article I, section 28 and its subdivisions was enacted "[n]evertheless . . . expressed continued trust in the discretion of the trial courts" and held that "despite the mandatory admonitions, that discretion under [Evid. Code] section 352 was expressly retained." (*People* v. *Castro, supra,* 38 Cal.3d at p. 312.)

That lead opinion most importantly held that subdivision (d) of article I, section 28, and the due process clause of the United States Constitution, Fourteenth Amendment authorizes, subject to the trial court's discretion, the use of convictions of any felonies which necessarily involve moral turpitude (*People* v. *Castro, supra,* 38 Cal.3d at pp. 306, 313-315).[3]

[3]Section 28, subdivision (d) provides: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, ·or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. *Nothing in this section shall affect* any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press." (Italics added.)

Justice Grodin, concurring and dissenting in *Castro,* after disagreeing in part with the lead opinion went on to agree with it "that evidence so potentially prejudicial must at least meet a threshold constitutional standard of 'relevance' " and accepted the " 'moral turpitude' " test. (*People* v. *Castro, supra,* 38 Cal.3d at p. 322.)

In Justice Lucas' concurrence and dissent he stated his conviction that the "new article I, section 28, subdivision (f) of the state Constitution was intended to abrogate *all* judicially created restrictions upon the admissibility of prior felony convictions, and to preclude the exercise of discretion to exclude certain prior convictions pursuant to section 352 of the Evidence Code." He further stated that he "would, in the absence of any restrictions imposed by the federal courts, allow admission of *all* prior felonies . . . ." (*People* v. *Castro, supra,* 38 Cal.3d at pp. 322-323; italics in original.)

The concurring and dissenting opinion of Chief Justice Bird and Justice Reynoso, after disagreeing with the lead opinion on the moral turpitude standard, concurred with that part of the lead opinion which held that trial courts retain discretion under Evidence Code section 352 to exclude evidence of prior felony convictions when their probative value is outweighed by the risk of undue prejudice and also agreed that the suggested factors set forth in *People* v. *Beagle, supra,* 6 Cal.3d 441, should guide the trial courts in the exercise of that discretion. (*People* v. *Castro, supra,* 38 Cal.3d at p. 323 (conc. and dis. opn. of Bird, C. J. and Reynoso, J.).)

A majority of four justices of the *Castro* court thus adopted the "moral turpitude" test of relevance and six justices favored the retention of trial court discretion even with respect to relevant prior convictions pursuant to Evidence Code section 352. We follow the decision of the *Castro* court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

B

In the case at bench, it appeared to us in our former opinion that appellant's prior conviction for the crime of arson, had no direct bearing on his credibility as a witness as that crime did not involve as a necessary element an intent to deceive, defraud, lie, steal or the like. *People* v. *Castro* now teaches us that the credibility of a witness, subject to the trial court's exercise of its discretion, may be impeached by evidence of a prior conviction of a felony involving moral turpitude. Insofar as the record reflects, appellant was convicted of a violation of Penal Code section 451. That section provides in pertinent part: "A person is guilty of arson when he willfully and maliciously sets fire to or burns or causes to be burned or who aids,

counsels or procures the burning of, any structure, forest land or property." We therefore necessarily conclude that under *Castro,* the least adjudicated elements of that conviction necessarily involve an intent "to do evil" or, in other words, moral turpitude, and that that prior conviction would on retrial, therefore be "prima facie admissible, subject to the exercise of trial court discretion [under Evid. Code, § 352]. Naturally, the more tenuous the court finds the connection between the moral defect shown by the conviction and the only defect directly relevant—dishonesty—the more likely it is to disallow impeachment." (*People* v. *Castro, supra,* 38 Cal.3d at p. 316; see also *People* v. *Parrish* (1985) 170 Cal.App.3d 336, 347-350 [217 Cal.Rptr. 700].)

### III

We reverse only for the reasons stated in part I. It is, nevertheless, difficult to visualize any circumstance at a future retrial in which the prosecution's introduction of evidence of appellant's prior arson felony conviction could possibly result in a miscarriage of justice if that introduction occurs only after appellant has first caused to be played in the presence of the trier of fact a tape recording which itself reveals that appellant has such a prior arson felony conviction.

The judgment is reversed.

Ringer, J.,* concurred.

**KINGSLEY, Acting P. J.,** Concurring and Dissenting.—I concur in the result.

I agree with part I of the majority opinion that the refusal to admit the tape recording was error and prejudicial error requiring a reversal.

However, I do not agree with the rest of the opinion dealing with Proposition 8. Except for a small number of *malum prohibitum* offenses, every felony necessarily involves "moral turpitude." If we are to gain anything from the various opinions in *Castro,* it is the same as we concluded in our original opinion, namely that you can impeach only by an offense involving dishonesty such as, for example, perjury or obtaining money under false pretenses. Arson, the prior offense herein involved, does not involve that kind of dishonesty.

---

*Assigned by the Chairperson of the Judicial Council.

Assuming that the tape recording would have indicated the nature of defendant's prior crime, that crime also had no impeaching value and to have permitted trial counsel to argue impeachment is error.